MECHANICS' BANK, Appellant, *v.* VALLEY PACKING COMPANY, Respondent.

June 12, 1877.

A., of St. Louis, being indebted to B., of St. Joseph, requested B. to draw upon him, upon which draft he would raise the money and remit the proceeds to B. on account of his indebtedness.   B. accordingly drew a draft to the order of C., his banker at St. Joseph, upon which C. endorsed, "Pay to D., or order, for collection for my account."   Upon receipt of the draft at

St. Louis, A. accepted it, and offered it for discount to plaintiff.  By consent of A. and plaintiff, the endorsement was stricken off, and plaintiff then discounted the draft, and A. received and remitted the amount to B.  In an action on the draft against B., the drawer, *held*, (1) that plaintiff could not, by parol evidence, show a contract between A. and B. by which the latter was to have the draft discounted on the faith of his name as drawer; (2) that the endorsement, being restrictive, destroyed the negotiability of the draft, and operated as a mere power of attorney to the banker at St. Louis to receive the proceeds of the draft for the use of the drawer; (3) that the erasure of the endorsement, without the knowledge or assent of B., destroyed the validity of the draft as to him, and plaintiff, having knowledge of the alteration, was bound to know that such was its effect when he took the draft.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

CLINE, JAMISON & DAY, for appellant:  The title to this bill passed to the Mechanics' Bank by delivery, and it had a right to sue in its own name, without resorting to a court of equity or suing in the name of the payee, to its own use, as at common law.  *Boeka* v. *Nuella*, 28 Mo. 180 ; *Willard* v. *Moies*, 30 Mo. 142 ; *Savage* v. *Bevere*, 11 Barb. 620 ; *Dugan* v. *United States*, 3 Wheat. 172 ; *Bank of United States* v. *United States*, 2 How. 711.  An endorsement "for my use," or "for collection," not being an actual transfer of the amount, may be recalled at pleasure. — *Potts* v. *Read*, 6 Esp. 57 ; *Trattel* v. *Baronda*, 8 Taun. 100 ; *Palmer* v. *Gardner*, 77 Ill. 143 ; *Naglee* v. *Lyman*, 14 Cal. 450 ; *Chatauqua Bank* v. *Davis*, 21 Wend. 584 ; *Dallfus* v. *Frosch*, 1 Denio, 367.  The parol evidence offered was competent. — 1 Dan. on Neg. Ins. 536, sec. 721 ; *Lawrence* v. *Stonington Bank*, 6 Conn. 521 ; *Dale* v. *Gear*, 38 Conn. 15 ; *Dale* v. *Gear*, 39 Conn. 89 ; *Rickets* v. *Pendleton*, 14 Md. 320 ; *Hill* v. *Ely*, 5 Serg. & R. 363 ; *McWirt* v. *McKee*, 6 Kan. 412.

GLOVER & SHEPLEY, for respondent:  The holder of an unendorsed note holds it as any other chose in action or commodity, and it has none of the attributes of negotiable paper. — *Patterson* v. *Cave*, 61 Mo. 439 ; *Hedges* v. *Seeley*,

9 Barb. 218; *Elliott* v. ———, Blackf. 212; *Fenn* v. *Harrison*, 3 Term Rep. 757; *Scott* v. *McDougal*, 14 La. An. 307; *White* v. *Foster*, 14 C. B. 258; *Haskell* v. *Mitchell*, 53 Me. 468. The words "for collection" make the endorsement restrictive. — *Marine Bank* v. *Vail*, 6 Bosw. 428; *Sigourney* v. *Lloyd*, 8 Barn. & Cress. 622; *Lloyd* v. *Sigourney*, 5 Bing. 525; *Drew's Assignee* v. *Jacobs*, 2 Murph. 139; *Murrow* v. *Stuart*, 8 Moo. P. C. 271. No evidence can be admitted to vary or control, by parol, the effect of the restrictive endorsement upon a bill. — *Hightower* v. *Ivy*, 2 Port. 308; *Holt* v. *Moore*, 5 Ala. 521; *Baillot* v. *Lee*, 33 Ga. 491; *Campbell* v. *Robbins*, 29 Ind. 271; *Crocker* v. *Getchell*, 33 Me. 392; *Forsyth* v. *Kimball*, 1 Otto, 294; *Kerr* v. *Von Phul*, 7 Me. 426; *Bouk* v. *Smith*, 27 Barb. 489; *Buckley* v. *Bentley*, 48 Barb. 283; *Bank* v. *Hooper*, 5 Gray, 567. The effect of the alteration. — *Evans* v. *Foreman*, 60 Mo. 449; *German Bank* v. *Dunn*, 62 Mo. 79; *Holland* v. *Locke*, 8 C. L. N. 397; 1 Greenl. on Ev., secs. 564, 566, and note, p. 605; *Ivory* v. *Michael*, 33 Mo. 398; *Briggs* v. *Glenn*, 7 Mo. 572; *Haskell* v. *Champion*, 30 Mo. 136.

HAYDEN, J., delivered the opinion of the court.

This is a suit upon a draft, brought originally against the respondent and the members of the firm of Levi L. Ashbrook & Co., but which has been dismissed as to the latter. The petition alleges that the respondent drew a bill of exchange at St. Joseph, Missouri, dated December 11, 1875, directed to Ashbrook & Co., by which it requested them to pay, ninety days after said date, to the order of Joseph C. Hull, cashier of a St. Joseph bank, $40,000, for value received, and to charge the same to respondent's account; that before the maturity of the bill it was delivered to Ashbrook & Co. by the respondent and by said Hull, cashier, with the request and authority by them respectively given to Ashbrook & Co. that the latter should accept the bill and negotiate and procure the same to be discounted, and

to pay the proceeds of the same, thus negotiated and discounted, to the Valley National Bank of St. Louis, for the account of the St. Joseph bank, for the use of the respondent; that the said Hull, in accordance with the arrangement, endorsed the bill of exchange, directing it to be paid to James T. Howenstein, cashier of the Valley National Bank, for the account of the St. Joseph bank; that under the instructions aforesaid Ashbrook & Co., before the maturity of the bill, received and accepted it, and negotiated and delivered it to the appellant for value, and that the appellant discounted it, and paid the proceeds to Ashbrook & Co., who thereupon paid the proceeds, as they were instructed to do, to the Valley National Bank, for account of the St. Joseph bank. The petition then alleges presentment to the acceptors for payment, refusal, protest, and notice to the respondent and to Hull, cashier, and asks judgment for the amount of the bill, etc. The answer of the respondent admits that it drew the bill, but denies that it was delivered to Ashbrook & Co. by the respondent and by Hull, cashier, with any such request or authority as alleged in the petition; admits that Hull, as such cashier, endorsed the bill to Howenstein, cashier of the Valley National Bank, for the account of the St. Joseph bank, but denies that this endorsement was made in accordance with any such arrangement as described in the petition; admits the acceptance, but denies that Ashbrook & Co. accepted under the instructions or authority charged; denies that Ashbrook & Co. delivered the bill to the appellant for value, or that the appellant discounted the bill for value, and alleges that Ashbrook & Co. had no power to do so, as the bill, before it came into the hands of Ashbrook & Co. for acceptance, had been endorsed by Hull, cashier of the St. Joseph bank, to, and made payable to, the Valley National Bank, the cashier of which, Howenstein, never endorsed or delivered the bill to the appellant. The answer then denies that the appellant paid the proceeds of the bill to Ashbrook, or Ashbrook to the

Valley National Bank; sets up that the bill did not belong to appellant, and denies protest, or any right in appellant to protest the bill; alleges that Ashbrook & Co., being indebted to respondent in the amount of the bill, and wishing time for payment, prepared the bill, as made payable, and delivered it to Hull, cashier, while unaccepted, and that he, as cashier of the St. Joseph bank, made the restrictive endorsement to the Valley National Bank, the correspondent of his bank in St. Louis, and sent the draft to Ashbrook & Co., to be handed, if accepted by them, to the Valley National Bank, for account of the St. Joseph bank. The answer alleges that neither the respondent nor the St. Joseph bank knew that any use had been made by Ashbrook & Co. of the bill until they received notice of protest, and sets up a material spoliation in erasing the restrictive endorsement without the consent of the respondent. The reply denies the affirmative allegations of the answer.

At the trial a jury was waived, and oral evidence was introduced by the appellant, much of which was admitted against the objection of the respondent, tending to show that there had been business transactions between the respondent and Ashbrook & Co., which had left the latter in debt to the former to more than the amount of the bill; that in December, 1875, one Peake, an agent of Ashbrook & Co., visited the respondent, at St. Joseph, and stated to it that Ashbrook & Co., to facilitate settling the business, wished to have the respondent draw on them at sixty or ninety days, and would pay the excess of the debt in cash; that the proposal made by this agent was that the respondent should draw a draft on Ashbrook & Co. for $40,000, at ninety days; that Ashbrook & Co. were to have the draft discounted, pay the discount, and place the $40,000 entire to respondent's credit; that respondent's secretary, Joseph C. Hull, accordingly said he would make the draft, to be discounted and placed to the respondent's credit; that the draft so drawn is the bill in suit, and was delivered to this

agent on December 11, 1875, at the St. Joseph bank (of which respondent's secretary was cashier), in its present condition, except that it had not been accepted, and that the endorsement had not been erased; that the secretary said that the proceeds of the draft were to be placed in the Valley National Bank, to the credit of respondent. This agent delivered the bill, as he received it from the secretary, to Ashbrook & Co., who got the bill discounted at the appellant's bank, on December 17, 1875, and had the proceeds of it entered there on the bank-book of one of the members of the firm, L. L. Ashbrook. He then drew a check for $40,000, and deposited it at the Valley National Bank, to the credit of the St. Joseph bank, for the use of the respondent. This check he testified was returned to him as paid, in the usual course, and was allowed to his firm in settlement with the respondent. This bill of exchange was received in evidence, against objection. It is as follows:

" $40,000.          ST. JOSEPH, Dec. 11th, 1875.

" Ninety days after date pay to the order of Joseph C. Hull, Cas., for forty thousand dollars,          STAMP. value received, and charge the same to account of

" VALLEY PACKING Co.

" Jos. C. HULL, *Sec'y.*

" To Levi Ashbrook & Co., St. Louis,

" No. 26,242."

Endorsed. " Pay James T. Howenstein, Esq., Cashier, or order, for collection for account of First National Bank, St. Joseph, Mo.

" Jos. C. HULL, *Cashier.*"

L. L. Ashbrook testified that he drew the lines through the endorsement, at the appellant's bank, after it had been passed on by the discount board and before the draft was entered on his bank-book; that some remark was made by

the bank officers about the endorsement, and he said it was immaterial, and run his pen through the lines. They asked if he could get another paper. He said he thought he could, and promised to get it changed. On December 17, 1875, the agent of Ashbrook & Co. wrote to the secretary of the respondent, informing him of the deposit of the $40,000 with the Valley National Bank; stating that the draft given him was not exactly in the right form, and could not be used, and that he would see the secretary and get him to make the change. Another application was made, but the respondent refused to give any bill. The appellant then asked Ashbrook & Co. for other securities, but did not get them. L. L. Ashbrook further testified that he caused the words " to use of Valley Packing Co." to be written on the deposit ticket placed at the Valley National Bank, on account of respondent's request, received from it through Ashbrook & Co.'s agent; that respondent was the owner of the bill, but at the time of the discount he did not so state to the appellant, as nothing was said about it. The appellant put in evidence two letters from Joseph C. Hull, cashier, to the cashier of the Valley National Bank, from which it appeared that the former notified the latter that he had drawn on Ashbrook & Co. for $40,000, at ninety days, and asked if they had deposited that amount; and subsequently that he informed the cashier of the Valley National Bank that Ashbrook & Co. had written to him asking for a new draft, which they could get discounted, and that the respondent had concluded not to give any. It further appeared that application was made first to the Valley National Bank, by Ashbrook & Co., for discount of the bill sued on, but refused; that that bank also decided to endorse it without recourse.

The respondent put in evidence letters from Peake and Ashbrook & Co., of dates respectively December 7th and 18th, to the secretary of the respondent, in regard to in-

formality in the draft sent, and requesting a new one, and proved that the St. Joseph bank paid no consideration for the bill sued on to the respondent, and held it only for them. On cross-examination, this witness stated that the St. Joseph bank was the financial agent of the respondent, who received the proceeds of the bill.

The appellant's instructions were refused. They need not be set forth, as the following instructions, given by the court at the request of the respondent, present the contrary applications of law in bolder and sharper outline, and with less interruption by unessential facts :

" 1. The Valley Packing Company moves the court to decide the law to be that, if the court finds from the evidence that said Joseph C. Hull, cashier of the First National Bank of St. Joseph, to whom said bill was payable, endorsed the same to James T. Howenstein, cashier of the Valley National Bank of St. Louis, for collection for account of the First National Bank of St. Joseph, and afterwards the same was accepted by said Ashbrook & Co., who caused the same to be discounted by the plaintiff, the effect of said endorsement to said Howenstein was to restrict the negotiation of said bill, and prevent the plaintiff or any other person from acquiring a title thereto as against the Valley Packing Company, for whom the same was held by said Hull, as cashier of said First National Bank, as appears by plaintiff's petition, and the jury must find for the defendant, said Valley Packing Company.

" 2. The Valley Packing Company moves the court, sitting as a jury, to decide the law to be that if the court finds from the evidence that, at and before the drawing of the bill in suit, Levi Ashbrook & Co. were indebted to the Valley Packing Company in a greater sum than $40,000 ; that said bill was drawn on said Ashbrook & Co. on account of said indebtedness, in favor of Joseph C. Hull, cashier of the First National Bank of St. Joseph ; that said National Bank of St. Joseph paid nothing for said bill, but held the same for the use of the said Valley Packing Company ; that

said Hull, before the acceptance thereof, endorsed said bill to James T. Howenstein, cashier of the Valley National Bank of St. Louis, and said Ashbrook & Co. afterwards caused said bill to be discounted by the plaintiff, the effect thereof is that the title to said bill never passed away from said Valley Packing Company, and the plaintiff acquired no title thereto as against the said Valley Packing Company, and the plaintiff cannot recover in this action.

" 3. The Valley Packing Company moves the court, sitting as a jury, to decide the law to be that if the court finds from the evidence that, at the time or prior to the drawing and endorsing of said bill in suit, certain conversations and negotiations were had between Samuel H. Peake, representing Levi Ashbrook & Co., and Joseph C. Hull, representing the Valley Packing Company, as to what the shape of said bill should be, or as to what the endorsement thereon should be ; and that, notwithstanding such conversations and negotiations, said bill was finally drawn and endorsed as it now appears, except the striking out of said endorsement of Joseph C. Hull thereon, by drawing lines through and over said endorsement, such conversations and negotiations can have no effect whatever to change or modify said bill or endorsement, nor to make it negotiable, nor confer any authority on said Ashbrook & Co., or any one of them, to discount said bill, or to strike out said endorsement therefrom, nor pass the title of said bill to the plaintiff, or any person, as against the Valley Packing Company.

" 4. The Valley Packing Company moves the court, sitting as a jury, to decide the law to be that if the court finds that, at and prior to the drawing and endorsing of said bill, said Levi Ashbrook & Co. were indebted to the Valley Packing Company in a greater sum than $40,000, and said bill was drawn on account of said indebtedness, payable to Joseph C. Hull, cashier of the First National Bank of St. Joseph ; that neither said Hull or said First National Bank gave any consideration therefor, or had any interest therein, but held the same for the use of the Valley Packing Com-

pany, and said Hull endorsed said bill to James T. Howenstein, cashier of the Valley National Bank of St. Louis, for collection, for account of said First National Bank of St. Joseph; and if the court further find that said Joseph C. Hull, after endorsing said bill as aforesaid, did consent that Ashbrook & Co. should cause said bill to be discounted with said endorsement upon it, such use of the bill would confer no right thereto against any other party on the bill save Levi Ashbrook & Co., and such use of the bill will not entitle the plaintiff to recover in this action.

" 5. The Valley Packing Company moves the court, sitting as a jury, to decide the law to be that if the court shall find from the evidence that Joseph C. Hull, cashier of the First National Bank of St. Joseph, to whose order the bill in suit was payable, endorsed said bill, on or about the 11th day of December, 1875, to James T. Howenstein, cashier of the Valley National Bank of St. Louis, for collection for account of the First National Bank of St. Joseph, and that afterwards the said endorsement was erased from said bill, by drawing lines through the same, by the act of Levi L. Ashbrook, one of the firm of Levi Ashbrook & Co., parties on said bill, and that said erasure was made without the consent of said Valley Packing Company, the effect thereof is to make null and void the said bill as to the Valley Packing Company, and the plaintiff cannot recover against said Valley Packing Company."

The court found for the respondent, and the case is here by appeal.

The general position of the appellant in regard to his right to recover appears to be this: that the court should go behind the form of the action, and declare the rights of the parties according to the underlying facts. This is an action on a bill of exchange, and, since the suit has been dismissed as to Ashbrook & Co., the acceptors, is an action against the drawer, who, after acceptance, stands as an endorser, to be held only by a holder who is entitled to give

notice and make protest. The pleadings settle and take out of the category of facts in issue this proposition : that Hull, cashier of the St. Joseph bank, endorsed the bill, directing it, thereby, to be paid to Howenstein, cashier of the Valley National Bank, for account of the St. Joseph bank. Yet this fact, alleged in the petition and settled by the pleadings, there is, on the part of the appellant, a constant effort to get rid of. The allegation is first made, in the petition, that this endorsement was in accordance with an arrangement by which Ashbrook & Co. were, upon request made and authority given them by respondent and Hull, cashier, to get the bill discounted. Thus, upon the action on the bill a contract is engrafted which is different from the contract implied by the bill, and inconsistent with the bill sued on. The appellant is driven to maintain — though naturally it does not bring the two propositions together, or state them in this form — that the action is and is not upon the bill. The difficulty of its case is that it is forced, in order to get title to the bill, to resort to the facts that destroy its title. Accordingly, in declaring on the bill, in place of setting out the contract as it is, the appellant omits a part, substitutes a parol agreement in order to do away with the legal effect of the bill, and seeks, finally, to recover, not on the bill, but on a contract which it can establish only by parol evidence, and which is negatived as soon as the bill is produced. But the rule that parties are concluded by the pleadings cannot be waived in its favor. It did not ask leave to amend, but stood by its petition, and attempted to support its case by parol testimony. This it had no right to introduce. It is of especial importance that the rule on this subject should not be departed from in case of commercial paper. Such paper is taken, and must necessarily be taken, by successive holders, in reliance on what appears upon its face. The meaning of the forms and expressions commonly employed on negotiable paper has been settled by adjudications, and the law itself has

given parties the right to rely on interpretations which the law has made. If these expressions, necessarily brief, are to have their meaning, as declared by law, subject to constant variation, the purpose of the law is defeated. With good reason, accordingly, has the rule been applied to this class of writings. *Leary* v. *Blanchard, infra,* where it is held that a restrictive endorsement, though intended to be general, cannot be shown to be such by parol. *Hightower* v. *Ivy,* 2 Port. 308 ; *Bartlett* v. *Lee,* 33 Ga. 491 ; *Campbell* v. *Robbins,* 29 Ind. 271.

The present is not a case of a general endorsement, or an endorsement in blank, and the reasoning drawn from such cases is without application. As the presumption is against restrictive endorsements, as restraining the negotiability of paper otherwise negotiable, so, where such endorsements clearly appear, their legal intent must be carried out according to the words of the writing. Here was not only an endorsement for collection, but an endorsement for collection on account of the payee. The bill on its face carried with it a trust, into whatever hands it went. *Wilson* v. *Holmes,* 5 Mass. 543 ; *Lloyd* v. *Sigourney,* 5 Bing. 525 ; *Sigourney* v. *Lloyd,* 8 Barn. & Cress. 622 ; *Murrow* v. *Stuart,* 8 Moo. P. C. 267 ; *Leary* v. *Blanchard,* 48 Me. 269 ; 1 Dan. Neg. Inst., sec. 698. The meaning of the words " for collection," in an endorsement, is now well settled. " That meaning," said Mr. Justice Miller, in *Sweeney* v. *Easter,* 1 Wall. 173, " was intended to limit the effect which would have been given to the endorsement without them, and warned the party that, contrary to the purpose of a general or blank endorsement, this was not intended to transfer the ownership of the note or its proceeds." * * * " The endorsement in the present case was not intended to give currency or circulation to the paper. Its effect was just the reverse. It prevented the further circulation of the paper, and its effect was limited to an authority to collect it." From the evidence in the case at bar the inference is plain

that the effect of the restricted endorsement, as here declared by the Supreme Court of the United States, is well known to bankers and men of business, and the knowledge acted upon by them. Outside of the fact in evidence in this case, that the bill was drawn by a creditor at the request of his debtor, as a means of settling the debt, or a part of it, the legal presumption from the accepted bill was that Ashbrook & Co. owed the respondent the face of the acceptance; and the position that the appellant had, upon what the bill itself showed, a right to suppose that it was discounting the bill for the accommodation of the respondent, is without foundation.

Stripped of extraneous matters, the facts, as shown by the evidence which the appellant contends is competent, are that Ashbrook & Co. owed the respondent over $40,000, and, being unable to pay it in cash, requested their creditor to draw on them for the amount at ninety days, the bill to be accepted by Ashbrook & Co., who undertook to procure the discount, and to pay the proceeds in discharge of their indebtedness into the Valley National Bank, for account of the St. Joseph bank, the latter acting without interest in the transaction, merely as the banker of the respondent. This agreement was pursued by the restrictive endorsement, as shown by the acts of Peake and Ashbrook & Co., who, when they received the bill, failed to dissent from the contract written upon it, or to return the bill. Upon finding that the Valley National Bank would not step beyond its authority, Ashbrook & Co. still made no complaint to the respondent that the agreement had not been carried out. Even when the appellant objected to the special endorsement, the bill was not withdrawn and sent back, but was taken by the appellant, apparently upon the faith of the acceptance, and in the expectation that additional security would be furnished by Ashbrook & Co.

Be this as it may, the bill, on its face, was a sufficient notification to the appellant that it was Ashbrook & Co.,

and they alone, who asked for the discount.   Under these circumstances, the restrictive endorsement was stricken out by Ashbrook & Co., and the money was advanced to them by the appellant.   The act of striking out the restrictive endorsement was an act which it was perfectly competent for Ashbrook & Co. to do, on the basis that the appellant was to look only to Ashbrook & Co. on the bill.   The fact that Ashbrook & Co. used the money which they received from the appellant to pay the debt which they owed the respondent could not give to the appellant any rights against the respondent, on this bill, which the appellant would not otherwise have had.   This, as a legal proposition, is obvious, yet here centres the whole argument of the appellant.   If Ashbrook & Co. had kept the money, as they might have done, the appellant, apparently, would not claim that it has any right of action against the respondent on the draft; but that the fact of Ashbrook & Co. paying the money in discharge of their debt creates a legal liability on the bill in favor of the appellant against the respondent, is a proposition which does not demand serious refutation.   Yet to this position of dependence on what it calls an equitable claim the appellant is driven by the facts.   It shows no title to the bill.   The bill belonged originally to the respondent. How did the title pass to the appellant?   The payee did not endorse it, nor was there any endorsement to the appellant. It is in the position of a party who buys in market an unendorsed bill.   But if the holder of a bill, being desirous of getting it discounted, carries it into market and sells it, without endorsing it, it is clear he cannot be held upon the bill. *Fenn* v. *Harrison*, 3 Term Rep. 757.   The purchaser of an unendorsed note buys it as he buys any other commodity.   He has a title to the note, but, its negotiable quality being lost, he holds it as he would any ordinary chose in action, and can acquire no rights by virtue of protest and notice.   *Patterson* v. *Cave*, 61 Mo. 439 ; *Hedges* v. *Seeley*, 9 Barb. 214.   Here the petition in effect states, and the

proof showed, that the St. Joseph bank paid no consideration for the bill, and acted merely for the respondent, and the appellant could not acquire any greater rights than the payee had.

The erasure, made by the common consent of Ashbrook & Co. and the appellant, evinced their determination to make a new contract of their own. The respondent had plainly signified, by the endorsement of its agent and banker, what its contract was, and upon what terms it was willing to let its name go forth upon the bill. Those terms, proposed on the bill itself, were not accepted; and to any new terms there is no evidence that the respondent assented. The effect of the alteration of the bill, without the assent of the respondent, was to destroy the validity of the bill as to the respondent. *Haskell* v. *Champion*, 30 Mo. 136; *Ivory* v. *Michael*, 33 Mo. 398; *Evans* v. *Foreman*, 60 Mo. 449; *German Bank* v. *Dunn*, 62 Mo. 79. And this the appellant was bound to know when it took the bill, which, within its knowledge, had been altered in a material matter.

The appellant insists that there was a trust conferred upon Ashbrook & Co., by the respondent, to raise the money on the bill, and to use the respondent's name for that purpose; that the money was so raised; and that, consequently, the respondent is liable. But, even allowing the writing to be contradicted by parol evidence, there is no testimony which shows that respondent entrusted its name to be used by Ashbrook & Co. Peake does not say so; and all the facts tend to prove the contrary. The trust is a deduction of counsel, not warranted by evidence. When Peake, and afterwards Ashbrook & Co., received the bill with the restrictive endorsement, neither dissented. If the understanding was that the respondent's name was to be used on the bill to procure the discount, this was a vital fact. As the endorsement expressly prohibited such use, surely the draft would at once have been returned with the complaint

that this was not according to the understanding. If, possibly, it was at first overlooked, the fact was brought home to Ashbrook & Co. by the refusal of the Valley National Bank to discount the bill with its restrictive endorsement, or even to endorse it in blank. Still there was no complaint that an authority, now claimed to have been given by agreement, had been prohibited on the face of the bill. Independently of this, however, it is sufficient to say that while the law sometimes raises agreements by implication, it does not raise them in the face of written contracts. It must be presumed that all men know that where a special power of attorney is given in writing by a principal, parties have no right to obliterate the writing and then presume that the law will imply, as against that principal, a general authority which is directly contrary to the writing they have obliterated.

The judgment of the court below is affirmed. Judge BAKEWELL concurs ; Judge LEWIS absent.