| 76 | 149 |
| 93 | 108 |
| 93 | 559 |
| 76 | 149 |
| 95 | 59 |
| 76 | 149 |
| 107 | 248 |
| 76 | 149 |
| 124 | 218 |

# Caldwell *v.* King.

*Creditor's Bill in Equity, to set aside Conveyance as Fraudulent, and for Discovery of Equitable Assets.*

1. *Effect of decree on pleadings.*—Though the court may suggest, or even direct an amendment, it can not, *ex mero motu*, amend the pleadings, or eliminate any part thereof; nor can a decree, rendered at any stage of the cause, operate to eliminate any part of the pleadings as they then stood.

2. *Filing bill in double aspect.*—A bill may be filed in a double aspect, or in the alternative; but each aspect or alternative must entitle the complainant to the same relief, and the same defenses must be applicable to each; and the same rule applies to an amended bill, or matter introduced by amendment.

3. *Same, in creditor's bill.*—When the bill attacks the validity of a conveyance by the complainant's debtor on the ground of fraud, and seeks to reach and condemn the property to the satisfaction of the complainant's demand, he can not ask, in the alternative, to have the unpaid purchase-money, or the proceeds of sale, condemned to the satisfaction of his debt; and, on the other hand, if he seeks to condemn the money, or proceeds of sale, he thereby affirms the change of title effected by the sale, and can not impeach the validity of the transaction. In other words, he can not claim, in the alternative, under and against the conveyance.

4. *Fraudulent conveyances; actual and constructive fraud.*—A voluntary conveyance is fraudulent and void, as against existing creditors, without any inquiry into the motives or condition of the parties; and if partly voluntary, or supported by an insufficient consideration, it is fraudulent as to the excess of the value of the property above the consideration, though, unlike a conveyance fraudulent in fact, it will be permitted to stand as security for the consideration actually paid, if the

grantee did not participate in any fraudulent intent. But a conveyance which is founded on full and adequate consideration, the grantee not participating in any fraudulent intent, will not be held constructively fraudulent, because the stipulated purchase-money is unpaid, or to the extent that it is unpaid.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 15th December, 1883, by Mrs. Mary Ann King and her husband, Henry W. King, as judgment creditors of Josephine Martin, against the said Josephine Martin and one Thomas Conboy; and sought to set aside, on the ground of fraud, a conveyance of a house and lot in the city of Mobile executed by the said Josephine to her co-defendant, and a discovery from the said Josephine of equitable assets belonging to her. The complainant's judgment was rendered, after protracted litigation, on the 23d May, 1883; the action having been commenced in December, 1877, and the case twice brought to this court by appeal.—67 Ala. 177; 72 Ala. 354. The deed to Conboy, a copy of which was made an exhibit to the bill, was dated the 30th November, 1881, and recited as its consideration the present payment of $2,000. The bill alleged that the consideration of this deed was simulated and fictitious—that no money was in fact paid by said Conboy, or, if paid, that it was paid with knowledge on his part of the fraudulent intent of the said Josephine to put her property beyond the reach of legal process, and to defraud, hinder and delay the complainants, in the collection of their demand then in suit; that the plan of a nominal sale was contrived and arranged by Oliver Caldwell, acting as the friend and agent of the said Josephine, but who was not made a party to the bill; and that Conboy, in becoming the purchaser, was fully informed of the plan and its purpose. The bill alleged, also, " that the said Josephine has money, property or effects, which are liable to the payment of complainants' said judgment debt, and is able to answer, under oath, what property she has, the nature thereof, in whose hands it is, and where situated." On these allegations, the bill prayed, that the court would " decree that said deed is null and void as against complainants' said judgment debt; and that the said Josephine Martin may be required and compelled to discover and set forth by answer what property, money or effects she owns, the nature thereof, in whose hands it is, and where situated; and that the same may be decreed to be liable to the payment of complainants' said judgment debt;" and the general prayer, for other and further relief, was added.

A decree *pro confesso* was regularly entered against Josephine Martin, and no further proceedings were taken against her.

[Caldwell v. King.]

An answer to the bill was filed by Conboy, denying the charges of fraud, fully and explicitly; alleging ignorance on his part of any fraudulent intent on the part of said Josephine Martin, with whom he was not acquainted, and of the pending litigation between her and the complainants; that he bought the property, together with another house and lot (which belonged to Almira Martin, against whom complainants had a similar suit pending), in good faith, from said Oliver Caldwell, who acted as the agent of said Josephine and Almira, at the price of $4,050, of which $2,000 was the agreed price of the house and lot involved in this suit, and executed his note for that sum, payable to his own order, and indorsed by him, due January 1st, 1882, and delivered said note, with the note for the other property, to said Caldwell, on his delivery of the deeds for the property; that he paid $500 on this note, in January, 1882, and gave a new note for the balance; and that he did not know to whom this note belonged, or who held or claimed it.

The cause being submitted for decree on pleadings and proof, the chancellor held and decreed, "that the complainants are not entitled to any relief as to the allegation and charge of fraud in the conveyance of said property by said Josephine Martin to said Conboy, and, so far as any relief is prayed for in the bill based on the fraud or invalidity of said conveyance, the same is refused and denied. But it is further ordered and adjudged, that the complainant is entitled to relief, in so far as the bill seeks to discover what property the said Josephine Martin has, out of which to make satisfaction of said debt; and it appearing that, although no answer has been filed by said Josephine Martin, making discovery of said property, the answer of said Conboy, and the testimony of other witnesses, show that a note or notes for a large sum have been given by said Conboy to said Josephine Martin, which is still her property, and liable to the satisfaction of complainants' said debt, if still in her hands; it is therefore ordered and decreed, that the register ascertain and report how much is due on complainants' said judgment, including principal and interest, and how much is due on said note or notes given by said Conboy; that the said Josephine Martin shall forthwith surrender said note or notes to the register, if in her hands; and if she shall not be able to surrender it, by reason of having assigned, transferred, or otherwise disposed of the same, then the register will ascertain and report who is the present claimant and holder of said note, and when, how, from whom, and under what circumstances said claimant now holds the same."

On the reference before the register, it does not appear that Josephine Martin was examined, or appeared; but said Oliver Caldwell, being examined as a witness, claimed the note of

[Caldwell v. King.]

Conboy as his absolute property, under an assignment by said Josephine Martin in January, 1883, in payment of her note for money loaned by him; and the register so reported. The bill was then amended, by leave of the register, by making Caldwell a party defendant; alleging that he claimed to be the owner and holder of said note, but was not in fact a *bona fide* holder for value in the due course of trade—that he acquired the possession in furtherance of the fraudulent scheme charged in the original bill, or held the same in secret trust for the said Josephine; and praying that the note be surrendered to the register of the court, that Conboy be required to pay the money into court, and that the same be applied to the payment and satisfaction of complainants' said judgment.

Caldwell appeared, and filed a demurrer to "the amendment to the original bill," on the ground that it was repugnant to, and inconsistent with the original bill. The chancellor overruled the demurrer, holding that, although the original bill was demurrable for multifariousness, in asking a discovery of assets as well as seeking to set aside the conveyance on the ground of fraud, the objection was waived by the failure to demur; that the bill, on the hearing on pleadings and proof, "was substantially dismissed as a bill to vacate and set aside the conveyance as fraudulent, and retained only as a statutory bill of discovery;" that "one of its alternative aspects, that charging the deed to be fraudulent and void, has been eliminated by the decree of the court, as effectually as if the complainants had struck it out by amendment, leaving nothing in the bill except as a statutory bill for a discovery of assets." The decree overruling the demurrer is now assigned as error.

R. H. Clarke, for appellants.—If the amendment had been incorporated in the original bill, there can be no doubt that its allegations and prayers for relief would have been inconsistent and repugnant with each other.—Cases cited in 1st Brick. Digest, 177, § 337. The amendment is not the commencement of a new suit, but a continuation of the original suit; and its averments and prayer for relief must be consistent with the original bill.— *Winter v. Quarles*, 43 Ala. 692 ; *Cain v. Gimon*, 36 Ala. 168; 1 Brick. Digest, 707, §§ 968–9.

R. Inge Smith, *contra*.—The alleged inconsistency, or repugnancy, if any, is not between the amended and the original bill, but in the original bill itself ; and it was waived, because not taken by demurrer.—*Ray's Adm'r v. Womble*, 56 Ala. 36 ; *Alabama Warehouse Co. v. Jones*, 62 Ala. 550 ; *Lockett v. Hurt*, 57 Ala. 198. The decree rendered on the pleadings and proof, before Caldwell was brought in as a party, eliminated

[Caldwell v. King.]

from the bill all but one aspect of the bill; and this appeal does not relate to that decree. It is too late for Caldwell, a new defendant, to raise objections which were waived by the original defendants, and which do not relate to the single issue presented against him. The fraudulent intent of the grantor, as alleged in the original bill, is admitted by the decree *pro confesso*; and Caldwell's connection with it was established by his own testimony, on the reference before the register. Conboy is relieved of the charge of fraud, and is protected as a *bona fide* purchaser for value, to the extent of the purchase-money paid; and the transaction being constructively fraudulent, as against the complainants, to the extent of the purchase-money unpaid, the court will prevent the consummation of the fraud, and appropriate this balance as prayed by the bill.—*Lyne v. Wann*, 72 Ala. 43; *Gordon, Rankin & Co. v. Tweedy*, 71 Ala. 202; *Berry v. Sowell*, 72 Ala. 14; 58 Ala. 224; *Kitchell v. Jackson*, 71 Ala. 556.

CLOPTON, J.—We can not concur with the chancellor, that the averments of the original bill, assailing the conveyance by Josephine Martin to Conboy for fraud in fact, were eliminated therefrom by the decree denying relief in this aspect of the bill, as effectually as if they had been struck out by amendment. A decree, of itself, can not operate to change or amend the pleadings. This must be done by the application of the party, and leave of the court. The court may suggest, or even direct, an amendment; but, in such case, it remains with the party to amend or not, as he may elect. It is beyond the power of the court, *ex mero motu*, to amend the pleadings, or eliminate any part thereof; nor can a decree on the merits have such effect. In all proceedings subsequent to the decree, the pleadings must be taken as they were at the time it was made. The character and effect of the amendment, made subsequently to the rendition of the decree, must, therefore, be considered, in respect to its consistency with the original bill, as if no decree had been rendered.

That a complainant, as a general rule, may file his bill with a double aspect, or in the alternative, is too well settled to be controverted, or doubted. If he is in doubt, whether, upon the case stated in the bill, he is entitled to one kind of relief or another, he may frame the prayer in the alternative, so that the court may grant the relief to which he is entitled under either alternative. If his title to relief depends upon either the existence or the non-existence of a particular fact, or whether it is one way or another, of which he is ignorant, he may make alternative statements, so as to obtain relief if either statement is confessed, or found to be true.

[Caldwell v. King.]

The limitations upon the general rule are as well defined as the rule itself. Each alternative statement must entitle the complainant, not only to relief, but to precisely the same relief; and the same defenses must be applicable. The alternative statements must not be inconsistent, or repugnant, and must present consistent titles to relief, so that, if a decree *pro confesso* be taken, the court, looking at the alternative statements and the confession, will not be left in doubt, or to conjecture, as to the relief to be granted.—*Moog v. Talcott*, 72 Ala. 210; *Lehman v. Meyer*, 67 Ala. 396; *City of Eufaula v. McNab*, 67 Ala. 588; *Rives, Battle & Co. v. Walthall*, 38 Ala. 329; *Shields v. Barrow*, 17 How. 130; *Lloyd v. Brewster*, 4 Paige, 537. A statement of the rule and its limitations will suffice, without illustrating them by a reference to the various cases in which they have been sufficiently and repeatedly applied, and with which the profession is familiar. The rules themselves are not controverted. The contention is as to their applicability to this case.

The complainants, having obtained a judgment against Josephine Martin, upon which execution was issued, and returned "No property," filed their bill for two purposes, or in two aspects—one attacking a conveyance of real property by her to Conboy, as having been executed on a pretended and simulated consideration in fraud of complainants' rights, and to have the property condemned to the satisfaction of their judgment; and the other, to compel a discovery, under section 3882 of Code 1876, of money, property or effects belonging to her, which are liable to the complainants' demand. Josephene Martin not having answered, a decree *pro confesso* was taken, and no proceedings were instituted to compel her to answer.

The chancellor, on hearing, decreed that complainants were not entitled to relief in the aspect of the bill charging the conveyance to Conboy to be fraudulent, and denied any relief based on its fraud or invalidity; but that they were entitled to relief in the other aspect. It appearing from the testimony that Conboy had given Josephine Martin a note for a part of the purchase-money of the property, which was outstanding, a reference by the register was ordered, to ascertain the amount due complainants on their judgment, the amount due on Conboy's note, and who held the note. No reference was ordered to ascertain any other property belonging to Josephine Martin, or held in trust for her.

On the reference, it was disclosed that the note of Conboy was held and claimed by Caldwell; and thereupon the complainants amended the bill. The amendment states, that Conboy gave a note for two thousand dollars, with interest from date, for the purchase-money of the property, upon which he

had paid five hundred dollars, in January, 1882, or 1883; and at that time, gave another note for the balance of the purchase-money, which was in the possession of Caldwell, who had given no consideration for it, and who took possession of, and holds the note, in furtherance of the scheme to defraud complainants, charged in the original bill, or holds it on some secret trust for Josephine Martin. The prayer of the amendment is, that Caldwell surrender the note to the register, and that the proceeds thereof be applied to the payment of complainants' judgment.

By the original bill, the complainants affirm the *invalidity* of the conveyance to Conboy, and on its *invalidity* base their title to relief. By the amendment, they affirm the *validity* of the conveyance, and base their title to relief on its *validity*, and the fraudulent transfer of the note to Caldwell. "When a creditor pursues and seeks to condemn money, or a debt, which is the product of a fraudulent sale, he can only claim the money as a debt, and will not be permitted to dispute the rightful change of title to the property."—*Price v. Masterson*, 35 Ala. 483; *Godden v. Pierson*, 42 Ala. 370. The converse proposition is equally true; that when a creditor pursues, and seeks to condemn *the property*, on the ground of fraud in the sale, and, of consequence, no rightful change of title, he will not be permitted to affirm there is a rightful change of title, and condemn the product of the sale. Inconsistent and repugnant titles to relief are presented by the original bill and the amendment, founded on inconsistent and repugnant statements. "The effect, in the one case, is to claim *against* the conveyance, and in the other, to claim under it."

The complainants, under the alternative claims of the bill as amended, are not entitled to precisely the same relief. In *Mooy v. Talcott, supra*, it is said: "There is one sense, in which the relief prayed for, in every possible aspect of the bill, is remotely the same—*the collection of the complainant's demand out of the defendant's property.* But the rule under consideration contemplates the immediate relief, which is the foundation and source of this remote relief." The immediate relief, in respect to the property conveyed to Conboy, to which the complainants are entitled on the statements of the original bill, is, that the property be sold for the payment of their judgment, and the removal of the conveyance as an obstruction or impediment to the sale. By such relief, Conboy forfeits all right to the property, and is divested of all ownership, or claim. On the statements of the amendment, the immediate relief is the condemnation of a portion of the product of the sale to Conboy, as a debt, to the payment of their judgment. The result of such relief is, to leave the title of Conboy unimpaired, and to permit him to remain in full ownership and

[Caldwell v. King.]

undisturbed enjoyment of the property; he being required to pay only the agreed purchase-money, and perform his contract of purchase. Not only are the titles to relief, but also the results, inconsistent and repugnant.

Had there been no intervening decree, and a decree *pro confesso* been taken on the bill as amended, by what rule, or on what principle, would the court determine what relief ought to be granted? Would the court, in such case, set aside the conveyance to Conboy, as fraudulent and invalid, and order the property sold; or would it condemn Conboy's note for the unpaid purchase-money to the complainants' judgment? The case would be placed in such condition as to make it a "mere matter of speculation and conjecture as to which of the titles should be made the foundation for relief?" If the court adopted either, it could not be certain that it was granting the relief to which the complainants were entitled.

It is contended, however, that to the extent of the unpaid purchase-money, the conveyance to Conboy is constructively fraudulent; that he is a voluntary grantee *pro tanto;* and that the amendment, maintaining in a varied mode the impeachment of the conveyance for fraud, is consistent with this aspect of the original bill. We can not assent to this proposition. The amendment does not, in any possible aspect, impeach *the conveyance* for any fraudulent intent on the part of the grantee, or for his participation in any guilty intent of the grantor. As against existing creditors, the law, in this State, declares a conveyance wholly voluntary to be fraudulent, without inquiring into the motives or condition of the parties; and fraudulent to the extent it is voluntary, when an inadequate consideration has been paid, and there is an absence of participation in any guilty intent of the grantor, on the part of the grantee. When a conveyance is constructively fraudulent, by reason of inadequacy of consideration, and the financial embarrassment of the grantor, the grantee not participating in any fraudulent intent, it may be permitted to stand as security for the consideration actually paid; but, when the deed is fraudulent in fact, it will not be allowed to stand for the purpose of reimbursing the grantee.—*Gordon, Rankin & Co. v. Tweedy,* 71 Ala. 202; *Potter v. Gracie,* 58 Ala. 303. A conveyance on sufficient consideration can not be avoided by creditors because of the fraudulent intent of the grantor, in which the grantee did not participate; and when a full and adequate consideration has been agreed to be paid, *the conveyance* will not be held constructively fraudulent, because and to the extent the consideration is unpaid, the grantee not participating in any fraudulent intent.

We do not mean to be understood as holding that a creditor

can not fill a bill with a double aspect—in one aspect, attacking a deed made by his debtor for the fraud in fact of both parties to the transaction; and•in the other, attacking it as voluntary, in whole or in part. The relief, in such cases, is the same, although there may be a difference in extent. What we do decide is, that a creditor can not file a bill in the alternative—by one alternative statement, charge actual fraud by both grantor and grantee, and, for this reason, seek to have a conveyance of his debtor declared invalid, and to have the property sold for the satisfaction of his demands; and by the other, admit the adequacy of the consideration, and, without alleging the participation of the grantee in the fraudulent intent of the grantor, seek to condemn the unpaid purchase-money; and that this can not be done by an amendment to the original bill.

It is further insisted, that the amendment is consistent with the aspect of the original bill, wherein it is filed for a discovery of money, property or effects, as provided and authorized by section 3882 of Code. It will not be seriously contended, that, in this aspect of the bill, there was an attempt or expectation to condemn a note, the product of a sale, which, by the other alternative statement of the bill, had been attacked as fraudulent in fact. The allegations of fraud in the sale and conveyance of the property to Conboy, and the effort to condemn the property to the complainants' debt, repel the proposition, that his outstanding note for the purchase-money was, as against them, property belonging to Josephine Martin. It is a sufficient answer to this proposition, however, that the amendment is inconsistent with, and repugnant to one of the alternative aspects of the original bill, as it remained at the time the amendment was made.

The demurrer should have been sustained.

Reversed and remanded.