# Williams, Deacon & Co. v. Jones.

*Bill in Equity by Assignee of Insolvent Bank, asking In-
structions; Cross-Bill by Creditors claiming Preference.*

1. *Amended answer and cross-bill; repugnancy with original.*—An
amended answer and cross-bill, when inconsistent with and repugnant
to the original, is demurrable; as where the original repudiates a pay-
ment, alleged to have been wrongfully made, and the amendment seeks
to ratify and claim the benefit of it.

2. *Remedies of holder, against prior parties to bill of exchange.*—The
holder of a bill of exchange may maintain, at the same time, separate
actions against the acceptor, the drawer and the payee, their liability
being fixed by proper protest and notice, and nothing but a payment of
the judgment against one will discharge the others; and where the bill
is held as collateral security for prior advances made to the payee, he
may maintain an action against the acceptor in the name of the payee.

3. *Election of remedies in case of wrongful payment.*—When a party
has a right to elect whether he will ratify or disaffirm a wrongful pay-
ment, he must either ratify or disaffirm it as an entirety; and he can
not, while suing the original debtor, maintain an action against the
person to whom the money was paid, or fasten a trust on the property
received by him in payment. But, if the property was merely received
as collateral security for the debt, he may pursue it in equity, and at the
same time maintain an action at law against the debtor; and the holder
of a bill of exchange, to whom it has been transferred as collateral secu-
rity by the payee, does not forfeit his right of action against the other
parties, by an unsuccessful suit against one.

4. *Dismissal of bill without prejudice.*—When a bill asserts inconsis-
tent and repugnant rights, and is dismissed on that account, the dis-
missal is properly made without prejudice.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 29th August,
1884, by Winston Jones, as assignee, or trustee, in a deed of
assignment executed by the Bank of Mobile for the benefit of
its creditors, against the said corporation and its creditors;
asking that the court would take jurisdiction of the trust,
instruct the complainant in the discharge of his duties, require
all the creditors to come in and propound their claims, settle all
conflicting claims and equities, and administer the assets as
required by law and the rules of equity. The deed of assign-
ment, which was executed on the 8th July, 1884, conveyed all
the assets and property of the bank, including two large tracts
of land, one situated near the city of Mobile, and the other in
Mississippi, on each of which a valuable saw-mill, with appur-
tenances, was situated; and also a large quantity of logs and

[Williams, Deacon & Co. v. Jones.]

lumber, of the estimated value of $80,000. The bill alleged that this property was taken by the bank from the Danner Land and Lumber Company, a private corporation, of which A. C. Danner was the president and principal stockholder, "at an aggregate value of $162,000, in settlement of a debt due from said company to said bank for certain discounts and over-drafts, and also in settlement of certain sterling exchange drawn by said company, at Mobile, on George Shadboldt & Son, London, England, to an amount exceeding $100,000; and which exchange had been bought·by said bank, and had been accepted; as your orator is informed and believes, and so avers, by said Shadboldt & Son, but which acceptances, at the time of said settlement, your orator charges, on information and belief, said Shadboldt & Son were unable to meet." The bill alleged, also, that Williams, Deacon & Co., bankers in London, who were made defendants to the bill, asserted a claim to this property, and a prior lien upon it, as the holders of said accepted foreign bills; but denied this claim and lien, on information and belief.

An answer and cross-bill was filed by Williams, Deacon & Co., to which the chancellor sustained a demurrer; and his de-cree was affirmed by this court, on appeal, at the last term. *Williams, Deacon & Co. v. Jones*, 77 Ala. 294. Afterwards, they filed an amended answer and cross-bill, to which the chan-cellor again sustained a demurrer, but on the ground of its in-consistency and repugnancy with the original; and from this decree they sue out the present appeal. The changes made by the amendments, as set out in the transcript, can only be under-stood by placing them in juxtaposition with the original answer and cross-bill. The following are the material parts of each, or the substance thereof:

1. Respondents have been carrying on a banking business in London for many years, "and have had dealings with said Bank of Mobile for over forty-five years; but said dealings were thought by them to be secured by the bank remitting to them collaterals to cover their drafts, as hereinafter stated; be-sides, they had confidence in the integrity of the bank officials, and in the solvency of the corporation." *Amendment:* "Add at the end of first paragraph, *But they relied, in their business dealings with said bank, on the collaterals they held, as herein-after stated.*"

2. The Danner Land and Lumber Company, a private cor-poration under the laws of Alabama, was largely engaged in the manufacture and shipment of lumber and sawn timber for English and European markets; and drew sundry bills of ex-change on George Shadboldt & Son, wood-brokers, residing and doing business in London, to whom it also shipped cargoes

of lumber and timber. "Said bills were drawn at sixty days after sight, and were duly accepted by said Shadboldt & Son on presentation. At the time said bills were drawn, said Danner was also president of said Bank of Mobile, and was actively engaged in the management of the affairs of said bank, as well as of said company. J. C. Strong, the secretary and treasurer of said company, drew said bills, by the instructions of said Danner, in large amounts, and at short intervals. These bills were lodged in the Bank of Mobile by said Danner, president of said company, and were.ordered to be discounted by him as president of said bank, and the proceeds to be placed to the credit of said company; and said Danner, as president of said bank, ordered and directed said bills to be remitted to Williams, Deacon & Co., to be collected at maturity, and at the same time, as president of said bank, ordered and directed that bills of exchange be drawn by said bank, generally at sixty days, and sometimes at sight, on Williams, Deacon & Co., to cover amount of said bills; and further ordered that, whenever, by the regular course of the business of the bank, foreign exchange was not sold in sufficient amount to cover these bills, that said bank should then draw exchange in its own favor on these respondents, and send the same to its correspondent bank in New York, in sufficient amounts to cover any balance on said bills which might at maturity come into the hands of Williams, Deacon & Co., on payment of said bills. This was done, and all such exchange was paid by these respondents; and large sums of money were thus drawn from respondents, and deposited in New York, on which said bank drew its domestic exchange."

3. If this course of dealing was not expressly ordered by said Danner .in his official capacity, it was done by his subordinate officials, with his knowledge and consent, and was ratified by him; and said lumber company "got the full benefit thereof, and these respondents paid all of said drafts of the bank, to the full amount of said foreign bills which they were drawn to cover."

4. "In furtherance of this scheme, as president of both corporations, to obtain money from these respondents to keep up said lumber company, and to keep said bank in funds, said Danner caused said bills to be drawn at sixty days after sight, and procured their acceptance by said Shadboldt & Son, to whom said company consigned its lumber and timber sent to England for sale."

5. Said bills, now unpaid, a list of which is given, amount in United States currency to $110,226.23, besides interest, which were thus discounted by said bank, and sent to these respondents, "who are *bona fide* holders thereof for value paid and advanced to said bank before the maturity of said bills."

" 6.  Respondents further show that, after said bills had been thus drawn, discounted and accepted, and after they became such holders for value, and after the bank had drawn on these respondents for the full amount thereof, and they had paid the same, said Shadboldt & Son announced their determination about the 9th July, 1884, not to pay the same to respondents, stating that they had received instructions from said lumber company and said bank not to pay the same ; alleging as a cause that, by reason of some transaction between said lumber company, the drawer, and said bank, the indorser, said bank had assumed to pay these bills, and had released said drawer and acceptors from liability thereon.  These respondents at once denied the right of said bank and said lumber company to make any contract whereby the rights of respondents, who were then and now the *bona fide* holders for value of all said bills, could be affected or impaired, without their consent.  Said bills were, at that time, all in the hands of respondents, and held by them against exchange drawn by said bank and paid by respondents.  Neither said bank nor said lumber company ever demanded said bills of these respondents, and never undertook to control them, or to claim the right to control them.  As said bills matured, they were, each and all, duly protested for non-payment, in accordance with the laws of England, where said bills were payable ; of which protest said bank and said lumber company had due notice ; and all the parties were promptly advised that respondents would look to each of them for payment."

*Amendment :*  Strike out this paragraph, and insert in lieu thereof :  " Respondents further show that, after said bills of exchange had been thus drawn and discounted in said Bank of Mobile, and accepted by Shadboldt & Son, and after said bank had drawn its exchange for the full amount thereof on these respondents, and they had accepted the same, and said bills, so accepted, were in the hands of third parties, said Shadboldt & Son announced their determination about the 9th July, 1884, not to pay the said bills which they had accepted ; alleging, as a reason, that the said bank had accepted payment in property for said bills from said Danner Land and Lumber Company, and had assumed to pay these bills to these respondents, and had released the said drawer and acceptors therefrom. All of said bills were, at said time, in the hands of these respondents, having been sent to them by the Bank of Mobile as collateral security to said bills of exchange drawn by said bank, in about a corresponding amount, with said Shadboldt & Son's acceptances.  Respondents did not, for some time thereafter, become informed of the character of said transactions ; and hence, as each bill matured, they were duly pro-

tested, of which said bank and said drawer had notice. Said bank and said lumber company had full knowledge that respondents held said acceptances as collateral to said bills of exchange."

7. The transactions between the bank and the lumber company, which resulted in the execution of the assignment to Jones as trustee, were stated in this paragraph, on information and belief; and it was alleged that the property was taken by the bank as payment of the sum of $162,000. *Amendment:* "Add, at end of said paragraph, these words: But, after said assignment, said Jones, the assignee, denied the right of these respondents to any share in said property so conveyed, or the proceeds thereof; and respondents were not informed of all the facts in reference to said sale, until long after their answer and cross-bill was filed in this court."

" 8. Said bank took said property in payment of the liability of the Danner Land and Lumber Company to it, the bank being ultimately liable to pay said foreign bills, having passed them to respondents prior thereto, and drawn the full amount thereof in advance of their maturity. As soon as said sale and conveyance were made, said Danner, as president of said two corporations, notified said Shadboldt & Son, the acceptors, not to pay any of said bills at maturity, asserting that the drawer had paid here; he well knowing, as president of said bank and said lumber company, that these respondents held said bills, and that said bank had drawn its exchange to the full amount of the proceeds thereof, and that respondents had paid the same, and that said bank had the money in its coffers, or under its control, and that respondents were the *bona fide* holders for value of all said bills; and that the indorsement thereon by said Manly, cashier, was only the form he had put thereon to identify the sender on the face of the bill, which was done with the knowledge and direction of said Danner; and that said form only meant that, if said bills were paid, said bank would be entitled to a credit therefor on its exchange account with these respondents; and that these bills were remitted to these respondents for the purpose of being held by them as their property, and, if collected, the proceeds to be credited on said exchange account. Accompanying each of said bills, as the same was remitted by first mail after discount thereof by the bank, the said bank, by R. F. Manly, its cashier, inclosed the same in its letter of advice, informing these respondents that each of said bills was remitted for its credit. Respondents agreed to receive them for its credit, and so entered them on their books, and have ever since held them as their property; and such was the course of dealing between said bank and respondents."

[Williams, Deacon & Co. v. Jones.]

*Amendment :*  " Strike out the 8th paragraph, and insert in lieu thereof the following :    8. Said bank took said property in absolute payment of the liability of said Danner Land and Lumber Company to it, growing out of said drafts drawn by it and so discounted, and in part for other claims; but said drafts amounted to fully two-thirds of the indebtedness extinguished by said sale of property to said bank by said company, and said bank agreed to protect said drawer and acceptors against any liability which might exist in favor of these respondents as the holders of said bills, and to pay the same in consideration of said sale ; all of said parties well knowing that these respondents were the *bona fide* holders for value of said drafts, and that they were held as collateral to said bills of exchange, so drawn by said bank and by them accepted, and then in the hands of third parties, to whom the bank had sold them, and received the money thereon.   As each of said acceptances of Shadboldt & Son was discounted in the Bank of Mobile, they were sent by first mail to these respondents, in a letter written and signed by R. F. Manly, cashier of said bank, in which he informed them that each of said bills was remitted for the credit of said bank.    On receiving each of said bills, complainant (?) agreed to receive them for the credit of the bank, and as collateral security to said bills of exchange drawn by the bank, which they had accepted, and were duly paid by respondents at maturity."

9.  "Said bank thus received from the drawers of said bills payment of the same in property, after the assignment of said bills to these respondents, and contracted for said consideration to release said drawer and acceptor from liability thereon, after said bank had assigned said bills to these respondents, and had received from them full value therefor, as above set forth.    Said bank thereby made itself the trustee of these respondents in reference to said property, and liable to account to them for the full value thereof, or for so much as the said bills bear to the whole amount of the debt thereby paid ; and said Jones, said assignee, was then and there a director of said bank, and was one of the persons appointed by it to negotiate and receive said property for it, and was active in said transaction, and participated in the same in all its details, and had full knowledge of the whole transaction, and took said property by said transaction charged with said trust."

*Amendment :*  " After the word ' drawer,' in third line of 9th paragraph, insert ' and acceptors ;' and after the word ' thereof,' in fourth line, ' as above set forth;' and after the word ' thereof,' in the sixth line, ' or for so much as the said bills bear to the whole amount of the debt paid thereby.' "

10.  " Respondents further show that said " lands,  mills,

[Williams, Deacon & Co. v. Jones.]

lumber, etc., "was the exclusive property of said Danner Land and Lumber Company, and was conveyed by it for the express and only purpose of paying its liability to said bank, as evidenced by these foreign bills ; that all the balance of the liabilities of said company were in the shape of discounts and overdrafts held and owned by the bank, which were surrendered at the time of the delivery of this property ; but these foreign bills not being held or owned by said bank, which said Danner well knew, said bank never undertook to surrender or deliver the same, and was powerless to do so, if it had, save by paying to respondents the amount thereof. Respondents make an exhibit showing the full amount of the indebtedness of said bank to them, with credits to which it is entitled," etc.

*Amendment:* " Strike out, in the 10th paragraph, all after the word '*bills*' in the fourth line, and insert in lieu thereof the following :   And some other discounts and overdrafts, amounting to about $50,000 ; that said bank, on receiving said property, released the said drawer and acceptors, and had such release entered on its books ; that said property was taken in payment of $162,000 of indebtedness, of which sum these acceptances of Shadboldt & Son held by respondents were over one hundred thousand dollars, and which acceptances said bank, for said consideration, agreed to pay.   Respondents show, also, that said bills of exchange so drawn by said bank, and accepted and paid by these respondents, were in about corresponding amounts to said Shadboldt & Son acceptances, and drawn immediately after the discount of each of said Shadboldt & Son drafts ; and each of said bills was accepted and paid by these respondents on the faith and security of. holding said Shadboldt & Son acceptances as collateral thereto ; that said bank had no credit with respondents for such a large sum of money ; that for many years they had required said bank to furnish collateral for the protection of respondents in honoring its foreign exchange ; that said bank had deposited with them, since September 22, 1881, $60,000 of Alabama bonds, class A, under an agreement for this purpose, which was required in their dealings long before they commenced receiving said acceptances of Shadboldt & Son, and which bonds were held by them at the time of the failure of the bank, and which respondents deemed sufficient for their protection in paying such foreign bills as the bank had been, for many years, in the habit of drawing ; and they were, besides, otherwise kept in funds by said bank, whenever drafts exceeded the value of said collaterals.   Respondents were informed and believed that the Danner Land and Lumber Company, the drawer of said bills, was a solvent and pecuniarily strong corporation, and that all

the said bills drawn by them and discounted in said bank were drawn against actual shipments of lumber and timber by said corporation to Shadboldt & Son, their wood-brokers in London; and they regarded said acceptances as solvent credits in their hands, and accepted the said bills drawn on them by said bank on the faith and security that said acceptances would be promptly paid at maturity, and thereby reimburse them for said advances. The limits of the credit said bank had with these respondents was about covered by the collaterals of Alabama bonds, and the excess they believed to be secured by the Shadboldt & Son acceptances. At the time of the failure of said bank, it had drawn its exchange on respondents, which they· had accepted, to an amount of, say $158,492; of which sum, all in excess of the value of said bonds, say $110,000, was accepted on the faith and security of the Shadboldt & Son acceptances, which they held as collateral to indemnify them against said money so advanced to said bank. Besides these fifteen bills, others had been previously remitted, matured and paid, and other exchange had been drawn against prior bills, and had been accepted, matured and paid; and at the failure of said bank, the state of accounts of said dealings was as herein stated. A copy of the letter of W. H. Pratt, then the president of said bank, remitting· said bonds, is hereunto attached as an exhibit, and made a part of this amended bill.'"

11. "Thus matters stood between these respondents, the Bank of Mobile, and the Danner Land and Lumber Company, when the depositors became alarmed for the safety of their deposits," &c., which resulted in a *run* on said bank on the 8th July, 1884; by reason whereof, the bank ·suspended payment on that day, and executed said assignment to Jones as trustee. ".Said deed conveyed all the assets of said bank, and all its property, rights and interest, including the property conveyed by said company to said bank to pay said foreign bills, as above set forth. In pursuance of said assignment, which was duly accepted by said Jones, he took possession of said property, and has ever since exercised dominion and control over the same. Respondents insist that said property, or its proceeds, should be applied to the payment of said debt of these *respondents* against said Danner Land and Lumber Company and said Bank of Mobile, both of which are indebted to them in said large sums of money, one as the drawer, and the other as the indorser of said bills of exchange, each having due and legal notice of the protest of said bills, and being otherwise liable therefor; because said company indemnified said bank by said conveyance of said property, and said company, in addition to said notice of protest, waived notice thereof, by notifying the acceptors not to pay the same to these respondents, at maturity

of said bills.   Said facts, which respondents are ready to verify, give them a prior equity over other creditors of said bank on the said property for the satisfaction of their said claim, because said company was the common debtor of your respondents and said bank at the time said sales were made, and said property was conveyed to said bank for the purpose of paying the debt of said company."

*Amendment:* "Strike out of the 11th paragraph all after the word '*respondents*' in the 14th line, and add in lieu thereof, '*Or so much thereof as said acceptances bear* to the value of the whole property as taken in *payment of said indebtedness of said Danner Land and Lumber Company by said Bank of Mobile.*'"

12.   "Respondents deny that the depositors of the bank have any preference of payment, in law or fact, over them, out of the other assets of the bank so alleged in said bill; and they claim that said assignee, by virtue of his authority under said deed of assignment, should pay them on their said claim the same percentage as depositors and noteholders, after first selling said real property, logs and lumber, and applying the same to the payment of said debt.   Respondents allege that said property was taken by said bank at an excessive valuation, and when said, assignee comes to realize on the same, that it will fall far short of paying respondents' said debt.   They have brought suit in the Queen's Bench in London, England, against said Shadboldt & Son as the acceptors of said bills, and against the Danner Land and Lumber Company, as drawers of said bills, in the Circuit Court of the United States for the Southern District of Alabama; which said suits at law are now pending, and when said trustee sells said property, and applies the proceeds thereof to the payment of said bills, said drawer and acceptors will then be entitled to a credit to the extent of the payment so made on their aforesaid liabilities."

*Amendment:* "Strike out the 12th paragraph, and insert in lieu thereof the following: '12. The said bank having received said property in satisfaction of the liability of said drawer and acceptors, while these respondents held said bills, they hereby ratify said purchase of said property by said bank, and claim that said assignee (Jones) should account to them for said property or its proceeds, and that he be held and treated as their trustee in reference to said property or the proceeds; and they renounce and relinquish all claim against said drawers or acceptors on said bills, and claim the right to recover said property, or its proceeds, in the hands of said Jones as assignee, and claim that, as to said drawers and acceptors, their liability on said acceptances stands paid and extinguished by the said sales of the property aforesaid; and they hereby offer to sur-

[Williams; Deacon & Co. v. Jones.]

render said bills to said assignee (Jones), on paying to complainants (?) their proportionate share of said property or its proceeds.'"

The 13th and 14th paragraphs recapitulated the material statements of the bill and answer, and contained the additional averment that the Bank of Mobile, the Danner Land and Lumber Company, and Shadboldt & Son were insolvent; and the prayer of the cross-bill was thus expressed in the 15th paragraph: "Respondents therefore pray, as complainants in this cross-bill, that said Jones be held and treated as trustee for them, as to all of said property so conveyed to said bank by the Danner Land and Lumber Company; and that he be directed to sell the same, and to pay over to your orators, or to their solicitors, the proceeds thereof, or so much thereof as these bills are in proportion to the whole value of the property, or the amount realized therefrom; and that he be required to account to them for any of said property heretofore sold, or the rents, income and profits of said mills since said sales and conveyances of said property, less the necessary expenses attending the execution of the trust; and that this hon. court will decree that, if said mill properties and their respective machinery, and said logs and lumber, be insufficient to pay respondents' said debt, then that said assignee be directed to pay them the balance thereof out of the other assets of said bank, *unless, in the meantime, said balance, if any, be paid by said drawers or acceptors of said bills;* and that it be referred to the register to take and state an account between these respondents and said bank *and said Danner Land and Lumber Company.*" The *amendment* to the prayer struck out the italicized words, as above copied.

The chancellor sustained a demurrer to the amended cross-bill, and dismissed it, but without prejudice. The decree sustaining the demurrer, and dismissing the cross-bill, is now assigned as error by Williams, Deacon & Co.; and the dismissal without prejudice is assigned as error by Jones, the complainant in the original bill.

OVERALL & BESTOR, for Williams, Deacon & Co.—(1.) These appellants, in their original answer and cross-bill, claimed too much, as this court decided. The amendment seeks only to avoid this difficulty, and to assert the rights which, under the former decision, they were entitled to assert on the facts alleged. The institution of the action at law against the drawer and acceptors, as alleged, does not estop them from ratifying the payment, and claiming the benefit of it.—*Kinney v. Kiernan,* 49 N. Y. 168; Wharton on Agency, 76–78; Ewell's Evans on Agency, 558; *Begman v. Bonsall,* 79 Penn.

[Williams, Deacon & Co. v. Jones.]

St. 298; *Abbott v. May*, 50 Ala. 98; *Spivey v. Morris*, 18 Ala.
254.   (2.) The amendment did not make a radical departure,
and ought to have been allowed.—*Cain v. Gimon*, 36 Ala. 173;
*Ingram v. Foster*, 31 Ala. 128; *Blackwell v. Blackwell*, 33 Ala.
57; *Adams v. Phillips*, 75 Ala. 462; *Ward v. Patton*, 75 Ala.
207; *Mahan v. Switherman*, 71 Ala. 563.   (3.) If the amend-
ment was properly disallowed, then the dismissal without preju-
dice was proper.—*Durant v. Essex Company*, 7 Wallace, 109,
and cases cited in note.   Besides, this part of the decree is not
revisable.—2 Dan. Ch. Pr. 1463.

GAYLORD B. & F. B. CLARK, Jr., and HANNIS TAYLOR, *contra.*
(1.) The amendment was properly disallowed, because it made
an entirely new case, and was incompatible and repugnant to
the original answer and cross-bill.— *Ward v. Patton*, 75 Ala. 207;
*Rapier v. Gulf City Paper Co.*, 69 Ala. 476; *Lloyd v. Brews-
ter*, 27 Amer. Dec. 88; *Wright v. Frank*, 61 Miss. 32; *Micou
v. Ashurst*, 55 Ala. 607; *Moog v. Talcott*, 72 Ala. 210; *Leh-
man v. Meyer*, 67 Ala. 396; *Ray v. Womble*, 56 Ala. 32; *Pitts
v. Powledge*, 56 Ala. 147; *Williams v. Barnes*, 28 Ala. 613;
*Charles v. Dubose*, 29 Ala. 367.   (2.) Williams, Deacon & Co.
had a right of election, either to ratify or to repudiate the
payment; and having made their election, with full knowledge
of all the facts, it is conclusive and binding on them, and is
irrevocable.—Co. Lit. 146; *Lawrence v. Insurance Company*,
11 John. 241; *Jones v. Atkinson*, 68 Ala. 167; Chitty on Con-
tracts, 741–2; 7 Bacon's Abr. tit. *Election;* 13 Mees. &
W. 834; *Lloyd v. Brewster*, 27 Amer. Dec. 88, *note;* 33 Amer.
Dec. 706, *note.*   (3.) The right of election being gone, the
complainants must stand by their actions at law, and the bill
ought to have been dismissed absolutely.

STONE, C. J.—There is such a repugnancy between the
original answer and cross-bill filed by Williams, Deacon & Co.,
and the amended answer and cross-bill subsequently filed by
them, that we think the demurrer to it was properly sustained.
The chancellor's reasons for his ruling are strong and well put,
and we could add nothing to them.   The authorities support-
ing his conclusion will be found in the briefs of counsel.

The chancellor dismissed the amended cross-bill without preju-
dice, and this is made the subject of a cross-assignment of error.
It is contended for appellee, that the pleadings show a final and
conclusive election made by Williams, Deacon & Co. to re-
pudiate the settlement the bank made with the Danner Land
and Lumber Company, and that they will not now be allowed
to claim that that settlement was made for their benefit.   The
Danner Land and Lumber Company drew the bills of exchange

9

on Shadboldt & Sons, who accepted them. They were payable to the order of the Bank of Mobile, and were indorsed by it to Williams, Deacon & Co. If this indorsement had been in the usual course of business, Williams, Deacon & Co. would have become the absolute owners of the paper, with a right to proceed against any and each of the parties for its collection, provided protest and notice of it were properly carried home to the drawer and indorser. And in such case, suit might have been prosecuted against each, until satisfaction was obtained from one. Neither mere suit, in such event, could have been pleaded in bar or abatement of either of the others. Williams, Deacon & Co. claimed that the Bank of Mobile had indorsed the bills to them in the usual course of business, and their suit against Shadboldt & Sons was based on that assumption. If their right to the bills had been what they asserted it was, their suit against Shadboldt & Sons would have opposed no obstacle to contemporaneous separate suits against the drawer and indorser of the bills. The error they committed was in supposing they had acquired a right to sue Shadboldt & Sons in their own name. The legal title to the paper had not passed to them, but remained in the Bank of Mobile. They held it as collateral security—a mere equitable right to its custody and collection, until they were indemnified for the payment of the bank's exchange drawn on them. The Bank of Mobile could have maintained a suit against Shadboldt & Sons as acceptors, and it would seem the mistake made by Williams, Deacon & Co. consisted in their suing in their own names, instead of that of the bank. Holding the paper as collateral security for the bank's indebtedness to them, they could have compelled the bank to allow the use of its name for the purpose of its collection.—Jones on Pledges, § 669. And such suit against Shadboldt & Sons, even if carried into judgment, would have been no bar to a subsequent suit against the Bank of Mobile, or against the Danner Land and Lumber Company, until there was a payment of the judgment against Shadboldt & Sons. And if there had been recovery against, and payment by Shadboldt & Sons, the latter would have had a right of action against the Danner Land and Lumber Company, for whose accommodation they had accepted; and the latter's payment to the bank, after being informed the bills were the property of Williams, Deacon & Co., would have been no defense to such suit.

What we have said above is intended to show that the suit against Shadboldt & Sons is no evidence of an election to look to them alone for payment of the bills, and to absolve the other parties to the paper. It is the not infrequent case of a creditor supposing that he has several parties bound to him,

[Williams, Deacon & Co. v. Jones.]

and committing the error of proceeding against one, on whom he fails to fasten a liability. This is no defense for others who are liable. We have thus eliminated from 'this controversy all influence the Shadboldt suit may be supposed to have upon it.

The question in this case is thus narrowed down to the inquiry, was the institution of the present cross-suit, without prosecuting it to a decree, such an election to disaffirm the payment made by the Danner Land and Lumber Company to the Bank of Mobile, as to bar all right to abandon such suit, ratify the settlement, and claim the property received in payment? Let it be borne in mind that, unless the Shadboldt acceptances were cancelled by the settlement the bank made with the Danner Land and Lumber Company, then the debt of which they were the evidence still rests on the company, and the bank has paid no consideration for that part of the property which the company transferred for their payment—one hundred and ten thousand dollars, as it is claimed. This property the bank's assignee holds, not in his own right, nor in the right of the bank's creditors. It paid nothing for it which the creditors could claim as assets of the bank. It parted with that which, *ex æquo et bono*, belonged to Williams, Deacon & Co.; and in case of their disaffirmance, it parted with nothing.— *Williams, Deacon & Co. v. Jones*, 77 Ala. 294. If the payment be disaffirmed by Williams, Deacon & Co., then the property belongs to the Danner Land and Lumber Company, or its creditors. So, in any event, neither the bank nor its assignee has any rightful claim to the property it received from the Danner Land and Lumber Company in payment of the Shadboldt acceptances, but holds it in trust. The present cross-suit, as originally framed, did not renounce all claim to the property thus received. Its claim was, that the transaction between the Danner Land and Lumber Company and the bank was not a payment; and it is sought to disaffirm it, not *in toto*, but as payment. It claimed that the Danner Land and Lumber Company and the bank were still debtors, and that the property turned over was only an additional security for the payment of that debt. We held that these were incompatible claims, and that the demurrer to the cross-bill, as thus framed, was rightly sustained. The original answer, made a cross-bill, rested its right of recovery, in a very material point of view, on a repudiation of the payment in property made by the Danner Land and Lumber Company to the bank, as a payment binding on Williams, Deacon & Co.; but, nevertheless, claimed the property as an additional security. This we held could not be done, for reasons then stated. The amended cross-bill seeks to ratify the payment as payment, dis-

charge the Danner Land and Lumber Company as its debtors, and to look alone to the property turned over, and its proceeds, for the payment of the claim it sets up.   This we have held is incompatible with, and repugnant to the original cross-bill ; and we affirm the chancellor's decree, sustaining a demurrer to it on that account.   This unsuccessful attempt to claim too much is in no sense a conclusive election to repudiate the payment made by the Danner Land and Lumber Company to the bank, so as to bar all right now to claim that the payment was made for its benefit.

In *Tatum v. Walker*, 77 Ala. 563, the original bill was filed to set aside a mortgage, and have it declared inoperative and void.   An amendment was filed, praying that, in the event the mortgage was not set aside, an account should be taken, and complainant be allowed to redeem.   There was a demurrer, assigning as a ground that the amended bill sought inconsistent and repugnant relief; first, against the validity of the mortgage, and, second, under the mortgage, as a valid conveyance. We held that the alternate phase, brought in by amendment, was incompatible with the original bill, made a new case, and was fatal to the suit.—*Heyer v. Bromberg*, 74 Ala. 524 ; *Caldwell v. King*, 76 Ala. 149.   We said: "If we treat the redemption aspect of the bill as sufficient in averment, then it is incompatible with the primary aspect—prays repugnant relief, makes a new case, and the demurrer should have been sustained ; and if amended so as to make it a sufficient bill to redeem, the same result must follow."   We dismissed the bill, "but without prejudice to the institution of another suit." We had concurred with the chancellor in his finding that the proof was not sufficient to set the mortgage aside as obtained fraudulently.   The dismissal without prejudice could, therefore, have had but one purpose and meaning—a permission to complainant to file a new bill to redeem,—the only relief left open to him.

There is nothing either in the assignments or cross-assignments of error, and the decree of the chancellor is free from error.

What we have said is based on the postulate, that the averments of the cross-bill are true.   The demurrer admits their truth.   The present ruling must be interpreted in connection with our former decision in this case.— *Williams, Deacon & Co. v. Jones*, 77 Ala. 294.

Affirmed.